IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00077-RBJ-KLM

HEINDEL SIRIBUOR,

    Plaintiff,

v.

UHS OF DENVER, INC., d/b/a Highlands Behavioral Health System, and
UHS OF DELAWARE, INC., d/b/a Universal Health Services, Inc.,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion to Enforce Settlement Agreement** [Docket No. 15; Filed May 18, 2012] (the "Motion"). Plaintiff submitted a Response in opposition to the Motion on May 25, 2012 [#17], and Defendants filed a Reply on June 6, 2012 [#18]. The Motion is ripe for review and referred to this Court for recommendation [#16]. For the reasons stated below, the Court respectfully recommends that Defendants' Motion be **GRANTED**.

### I. Background

Plaintiff, who is a lawyer, initiated this lawsuit *pro se* on January 12, 2012, pursuant to Title VII of the Civil Rights Act of 1964. [#1]. Plaintiff worked at Defendants' hospital as a registered nurse from January 28, 2010, through October 14, 2011. *Id.* at 3. Plaintiff brings two claims against Defendants, for harassment and racial discrimination. *See generally id.* Defendants answered Plaintiff's Complaint on February 8, 2012. [#3].

The District Judge entered a Scheduling Order on April 13, 2012, and referred the

case to the undersigned for an Early Neutral Evaluation, which was held on April 23, 2012. *See* [## 10, 13, 14]. Defendants filed the instant Motion on May 18, 2012 [#15]. Defendant contends that on April 27, 2012, the parties reached a settlement agreement, on which Plaintiff then reneged the following day. *Id.* at 2. Defendants thus ask the Court to enforce the alleged April 27, 2012 settlement agreement. *Id.* at 3.

In his Response, Plaintiff recounts the settlement negotiations between himself and counsel for Defendants. *See* [#17]. In essence, Plaintiff admits the sequence of events as described by Defendant, but premises the retraction of his agreement to settle on an allegation that Defendants "deliberately included misleading statements and untruths in their ENE statement to the presiding Court." *Id.* at 3. Plaintiff contends that the two sides never reached a full meeting of the minds as to an element of the proposed settlement; that is, what would constitute a "full release." *Id.* at 5. Thus, Plaintiff asserts that a contract was never fully formed, as "Plaintiff and Defendants never discussed or reached an agreement on the full scope and extent of Defendants' demands in return for the offer to Plaintiff." *Id.* at 7.

In reply, Defendants characterize Plaintiff's emphasis on the "full release" aspect of the settlement negotiations as a distraction. [#18] at 4. Defendants attest that the "most current" string of communications did not address the release as an essential element of the deal, thus the release is immaterial to the formed contract concerning "monetary compensation and [a] neutral employment reference." *See id.* at 4-5. The Court agrees.

## II. Findings of Fact

"No evidentiary hearing is necessary in this matter because the material facts concerning the terms of the settlement agreement are undisputed." *Brackens v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 07-cv-01953-REB-KMT, 2008 WL 906121, at *2 (D. Colo.

Apr. 1, 2008) (citation omitted). Plaintiff's description of the material facts at issue matches that provided by Defendants. *Compare* Mot., [#15] at 3-5, *with* Resp., [#17] at 3-4. The Court recommends that the following facts be accepted as undisputed:

   1. In an email dated February 14, 2012, at 12:55 p.m., counsel for Defendants made the following settlement offer to Plaintiff: "a two-week severance totaling $2,542.78 . . . [and] a full release of all claims . . . including a dismissal of the currently pending suit with prejudice and an agreement that the settlement and its terms remain confidential." [#15-2].

   2. In an email dated April 23, 2012, at 3:48 p.m., Plaintiff explained that his "goals" in the lawsuit were two-fold: "monetary damages and vindication through the court process." In light of these goals, Plaintiff made the following counteroffer: "three years wages, $198,336.84 . . . plus a guarantee of neutral reference." [#15-3].

   3. In an email dated April 26, 2012, at 8:43 a.m., Defendants increased their offer to "three weeks of severance pay ($3,814.17) plus an additional $185.83 for a total offer of settlement of $4,000.00." [#15-4].

   4. In an email sent at 1:28 p.m. on the same date, Plaintiff decreased his counteroffer to "one year's wages." Plaintiff also mentioned his interest in "a settlement agreement guaranteeing, among others, neural [sic] employment reference . . . ." [#15-5].

   5. At 4:32 p.m. on the same date, Defendants sent a return email, indicating their offer "to pay $4,500 and to provide a neutral response when contacted by [Plaintiff's] potential employers." [#15-6].

   6. The following day, April 27, 2012, at 10:40 a.m., Plaintiff replied, stating "Ok, you can go ahead and start the paperwork. Thanks again for all your time." [#15-7] at 2.

   7. Defendants responded on the same date (the email is time stamped as 16:40:32

+0000), with an inquiry: "By paperwork, you mean the settlement documents memorializing a settlement for $4,500?" *Id.* at 1.

8. Plaintiff replied in an email time-stamped as 12:13 p.m.: "Yes, and the neutral reference." *Id.*

9. Defendants again responded on the same date (the email is time stamped as 18:42:09 +0000): "Sounds good. I will prepare the settlement documents as well as Notice of Settlement which I will file with the Court advising of our pending resolution." *Id.*

10. Plaintiff replied again, in an email on the same date and time-stamped at 10:12 p.m.: "Sure. Just let me see the draft before filed. Thanks." *Id.*

11. The following day, April 28, 2012, at 9:35 a.m., Plaintiff sent an email to Defendants identifying "points" which allegedly indicated "why the ENE favored [Defendants]." In light of the "points," Plaintiff "[went] back to [his] offer to take one year's wages and a neutral employment reference . . . ." [#15-9].

12. Defendants sent a responsive email on the same date (time stamped 15:59:35 +0000), indicating their position that they "have confirmed in writing that the case has settled for 4500 . . . I have drafted the settlement documets [sic] and will have a draft of them to you on Monday. Please confirm". [#15-10] at 1.

13. Plaintiff replied at 2:42 a.m. on April 30, 2012, stating in part, "$4500 is no deal." *Id.*

### III. Standard of Review

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (citation omitted). "Issues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law."

*United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). Colorado law provides that the essential elements of a contract include "mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Indus. Prods. Int'l, Inc. v. Emo Trans., Inc.*, 962 P.2d 983, 988 (Colo. App. 1997) (citation omitted). "An offer is a manifestation by one party of a willingness to enter into a bargain," and "acceptance is a manifestation of assent to the terms of the offer." *Id.* (citation omitted).

A settlement is a contract to end judicial proceedings, and as such, before a court finds a settlement agreement to be binding and enforceable, it must appear that there was a "meeting of the minds" as to its terms and conditions. *H.W. Houston Constr. Co. v. Dist. Court*, 632 P.2d 563, 565 (Colo. 1981). In addition, before the Court can find that an agreement has been reached, "it must appear that further negotiations are not required to work out important and essential terms." *Id.* (citation omitted). In Colorado, "whether negotiations are sufficiently definite and final to create a binding contract is to be decided by the finder of fact." *Shoels*, 375 F.3d at 1062. That is, "[t]he terms of the settlement agreement must be clear, unambiguous, and capable of enforcement." *City & Cnty. of Denver v. Adolph Coors Co.*, 813 F. Supp. 1476, 1479 (D. Colo. 1993).

Finally, courts have indicated a strong policy favoring dispute resolution rather than protracted litigation. *See Humphreys v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-00331-WYD-KMT, 2009 WL 1292617, at *6 (D. Colo. May 8, 2009) (collecting cases). As long as "the terms of the settlement agreement [are] clear, unambiguous, and capable of enforcement" and the parties have reached a meeting of the minds, resolution of claims by settlement is preferred. *Adolph Coors Co.*, 813 F. Supp. at 1479; *see also United Mine Workers Dist. No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 810 (10th Cir. 1981).

### IV. Analysis

The instant case is analogous to a similar dispute adjudicated in this District, *Brackens v. Sedgwick Claims Management Services, Inc.*, No. 07-cv-01953-REB-KMT, 2008 WL 906121 (D. Colo. Apr. 1, 2008). In *Brackens*, the *pro se* plaintiff accepted a settlement offer during a telephone conversation, pursuant to which he would forgo his appeal in exchange for a previously-dismissed defendant giving up its right to collect costs imposed against the plaintiff. *See* 2008 WL 906121 at *2. Counsel for the defendant indicated that he would send to the plaintiff a "Settlement Agreement and General Release which would contain the terms of their agreement." *Id.* The conversation occurred on a Friday evening, and on the following Monday morning, the plaintiff contacted counsel for defendant to say that he had changed his mind. *Id.* The defendant then filed a motion to enforce. *Id.*

The court upheld the settlement offer and acceptance as an oral contract. *Id.* at *2-*3. The court noted that counsel for defendant's indication that a written agreement would be forthcoming did not alter the formation of the oral contract, as "[i]t was not part of the agreement that the terms the parties had agreed upon were 'subject to' preparation of a written document." *Id.* at *3 (citation omitted). Further, the court emphasized that the plaintiff "[did] not argue there were any terms of the agreement which were still open to discussion or negotiation." *Id.* Because "later dissatisfaction with the terms of a stipulated compromise agreement is not sufficient grounds to set it aside," the court enforced the oral settlement agreement. *Id.* (citation omitted).

The instant matter, although similar, is distinct from *Brackens* in two primary ways. First, the negotiations were recorded in the exchanged emails, thus the alleged contract is not oral. Second, Plaintiff contends that an essential term of the alleged agreement was

not negotiated, that is, the scope of the "full release." It is this assertion that provides the basis of Plaintiff's argument that "an enforceable agreement was never reached to the extent Defendants' demand for 'full release' in Defendants' counter-offer of February 14, 2012 . . . never survived the many offers, counter-offers, and rejections by both Plaintiff and Defendants." [#17] at 5.

The Court finds that the specter of a non-negotiated release is a red herring presented by Plaintiff. "In Colorado, whether negotiations are sufficiently definite and final to create a binding contract is to be decided by the finder of fact." *Shoels*, 375 F.3d at 1062 (citation omitted). Here, Plaintiff candidly explained his two "goals" concerning his lawsuit: vindication and monetary compensation. See [#15-3]. Plaintiff clearly articulated that vindication could be obtained "through an agreement guaranteeing [a] neutral employment reference by [Defendants] for all future queries." *Id.* The term of a full release was never again mentioned after the February 14, 2012 settlement offer communicated by email to Plaintiff from Defendants, in the context of an objection or counteroffer by Plaintiff, or otherwise. *See* [#15-2]. The ensuing negotiations focused on Plaintiff's stated goals - compensation and a neutral reference. *See* [## 15-2 through 15-6].

The Court finds that Defendants' last offer, communicated in the email sent at 4:32 p.m. on April 26, 2012, was accepted by Plaintiff not once, but twice. *See* [#15-7]. Plaintiff first responded to the last offer with: "Ok, you can go ahead and start the paperwork. Thanks again for all your time." *Id.* at 2. Then, after Defendants asked Plaintiff if, "by paperwork, [he meant] the settlement documents memorializing a settlement for $4,500," Plaintiff again indicated his acceptance of the offer with an additional confirmation: "Yes, and the neutral reference." *Id.* at 1. That the parties intended the formation of a contract is reinforced by the subsequent exchange confirming that counsel for Defendants would

prepare settlement documents and a filing with the Court indicating that the parties had reached resolution of the case. *See id.* ("Sure. Just let me see the draft before filed. Thanks."). Plaintiff explicitly affirmed that Defendants should prepare to inform the Court that the parties had reached a settlement. *Id.*

The content of the email retracting Plaintiff's purported acceptance further belies his contention that the absence of negotiations regarding a release demonstrates the absence of an enforceable contract. *See* [#15-9]. Again, Plaintiff did not mention any concern regarding a release; in fact, a release was not mentioned at all. *See id.* Plaintiff simply communicated that he had changed his mind, as he decided that "Defendants had deliberately included misleading statements and untruths in their ENE statement to the presiding Court." *See* [#17] at 3.

"[A] party who knowingly and voluntarily authorizes the settlement of [his] claims cannot avoid the terms of the settlement simply because [he] changes [his] mind." *Brackens*, 2008 WL 906121 at *3 (citing *Woods v. Denver Dep't of Revenue, Treasury Div.*, 45 F.3d 377, 378 (10th Cir. 1995)). Additionally, "[w]hile the [correspondence] clearly contemplates working out a more detailed agreement, nowhere does it state that the existence of a binding contract is conditioned on successfully completing that process." *Shoels*, 375 F.3d at 1065. "[T]he evidence must show that the parties agreed upon all essential terms[,] . . . [and] it must appear that further negotiations are not required to work out important and essential terms." *Joseph Brazier, Ltd. v. Specialty Bar Prod. Co.*, No. 06-cv-01416-WDM-KLM, 2009 WL 690308, at *2 (D. Colo. Mar. 12, 2009) (citations omitted).

Here, the essential terms of the settlement agreement as stated by Plaintiff were vindication via neutral reference and monetary compensation, and the exchanged emails demonstrate that the parties reached agreement as to these essential terms. Nothing in

the email exchange indicates the parties' intent for further negotiations to work out other terms considered to be essential by either side.  Thus, the Court finds that the essential terms of the agreement were fully negotiated and are "clear, unambiguous, and capable of enforcement."  *Adolph Coors Co.*, 813 F. Supp. at 1479.

## V. Conclusion

Accordingly,

IT IS RESPECTFULLY **RECOMMENDED** that **Defendants' Motion to Enforce Settlement Agreement [#15]** be **GRANTED**.  The Court finds that the parties have agreed to the following essential terms of a settlement agreement: $4,500 payment to Plaintiff by Defendants, and that Defendants shall provide a neutral employment reference for Plaintiff if Defendants are contacted by a prospective employer.

IT IS FURTHER **ORDERED** that **Plaintiff's Motion for Leave of the Court to Append to Response** [Docket No. 28; Filed June 19, 2012], **Plaintiff's Motion for Leave to File Amended Complaint** [Docket No. 29; Filed June 19, 2012], and **Defendants' Motion for Extension of Discovery Deadline and to Compel Deposition** [Docket No. 40; Filed July 16, 2012] are **DENIED AS MOOT**.  The Court will issue a recommendation regarding Defendants' Amended Motion for Attorney's Fees [Docket No. 25; Filed June 18, 2012] in due course.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated July 23, 2012, at Denver, Colorado.

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge